UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| CORRY CASTANEDA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> DOUGLAS COUNTY SHERIFF'S ) <br> INVESTIGATOR RORY PLANETA; ) <br> DOUGLAS COUNTY SHERIFF'S DEPUTY ) <br> SHIELDS; RON PIERINI, individually and in ) <br> his official capacity as DOUGLAS COUNTY ) <br> SHERIFF; and DOUGLAS COUNTY, a duly ) <br> constituted political subdivision of the State of ) <br> Nevada, ) <br> ) <br> Defendants. ) | 03:05-CV-0283-LRH (RAM) <br><br> ORDER |

Presently before this court is Defendants Douglas County Sheriff's Investigator Rory Planeta, Douglas County Sheriff's Deputy Shields, Douglas County Sheriff Ron Pierini, and Douglas County (collectively "Defendants"), motion for summary judgment (#21[1]). Plaintiff Corry Castaneda has filed an opposition (#28), to which Defendants have replied (#38).

**FACTS AND PROCEDURAL HISTORY**

This matter arises out of the detention and arrest of Plaintiff during the early morning hours of New Years Day, 2004. Plaintiff's complaint alleges that he was shoved by officers as they pushed through a crowd. When Plaintiff turned around after the initial contact, he alleges he raised his hands to his face and his knee towards his chest in a defensive action meant to protect himself from further blows. Plaintiff's knee then struck Defendant Planeta, an investigator with

---

[1] References to (#XX) refer to the court's docket.

1  the Douglas County Sheriff's Department, in the inner thigh.  Defendant Planeta alerted
2  Defendant Shields, a Douglas County Sheriff's Department Deputy, that he believed he had been
3  attacked.  Defendant Shields then struck Plaintiff in the face, breaking his nose, before he and
4  Defendant Planeta placed Plaintiff under arrest for battery on an officer.

5  Plaintiff alleges he was then taken to booking.  At the booking station Plaintiff alleges
6  that he was improperly controlled through the use of a Taser, which caused additional injuries.
7  Plaintiff was then transported to the local jail.  Plaintiff states that his broken nose was bleeding
8  profusely but that he was denied appropriate medical attention, having to re-set his nose himself.

9  Plaintiff was ultimately released and charged with battery upon an officer, a felony.  That
10 charge was ultimately dismissed without prejudice and replaced with two misdemeanor charges
11 of battery and disorderly conduct.  At trial, Plaintiff was acquitted upon both charges.

12 Defendants discuss the events of that night in a markedly different manner than Plaintiff.
13 According to Defendants, a visibly intoxicated Plaintiff turned toward Defendant Planeta, raised
14 his hands to a fighting position and attempted to knee Defendant Planeta in the groin.  Defendant
15 Planeta avoided the blow by turning slightly and alerted Defendant Shields that he was being
16 attacked.  Defendant Shields then struck Plaintiff in the face once with his fist to protect
17 Defendant Planeta and gain control over a potentially dangerous situation.  Plaintiff was then
18 placed under arrest and taken to booking.

19 At the booking station Plaintiff, still appearing intoxicated and smelling of alcohol,
20 became belligerent.  He screamed multiple profanities at Deputy Stroke, the officer completing
21 the booking, and at EMT Fernando Moriera, who had come to attend to Plaintiff's injuries.
22 Plaintiff also refused to comply with Deputy Stroke's commands relative to the necessary search
23 of Plaintiff's person for booking.  Deputy Stroke informed Plaintiff that if he did not comply with
24 the orders, as well as stop using his elbows violently, he would be subjected to the use of a Taser.
25 When Plaintiff still failed to comply he was subjected to one five second cycle with the Taser,
26 after which he became compliant.

27 Defendants do not dispute that Defendant Planeta initiated contact with Plaintiff but note
28 that he did so while he and several officers attempted to transport an arrested individual through

1  the massive crowd that had assembled for the New Year's festivities.  Defendants note that
2  several individuals had to be moved to allow for the officers to pass and all but Plaintiff were
3  moved without incident.   Defendants also do not dispute that Plaintiff was acquitted on the
4  charges brought against him.

5  　　　　Plaintiff's first claim for relief seeks recovery under 42 U.S.C. § 1983 for Defendants use
6  of excessive force.  Plaintiff's second claim for relief alleges claims for damages based on an
7  improper custom or policy leading to Plaintiff's injuries as well as for a failure to properly train
8  the officers involved.  Plaintiff's third claim for relief brings a state law claim for assault and
9  battery.  In Plaintiff's fourth claim for relief, injunctive relief against Defendants' allegedly
10 unconstitutional acts is requested.  In Plaintiff's fifth claim for relief he asks for punitive
11 damages.  In Plaintiff's sixth claim for relief, attorney's fees are sought.

12 　　　　Defendants have moved for summary judgment claiming that their actions were
13 privileged and that they are entitled to qualified immunity.  Defendants also claim that Plaintiff
14 lacks standing to seek injunctive relief and that punitive damage are not available.

15 　　　　　　　　　　　　　**LEGAL STANDARD FOR SUMMARY JUDGMENT**
16 　　　　A court must grant summary judgment if the pleadings and supporting documents, when
17 viewed in the light most favorable to the non-moving party, "show that there is no genuine issue
18 as to any material fact and that the moving party is entitled to judgment as a matter of law."
19 Fed.R.Civ.P. 56©).  An issue as to any material fact is only "genuine" if the evidence regarding
20 the disputed fact is "such that a reasonable jury could return a verdict for the nonmoving party."
21 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The mere existence of a scintilla of
22 evidence in support of the plaintiff's position will be insufficient [to preclude summary
23 judgment]; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.*

24 　　　　　　　　　　　　　　　　　　　　**DISCUSSION**
25 　　　　Plaintiff brings six claims for relief in his complaint.  The first three claims seek damages
26 under 42 U.S.C. § 1983 or state law.  The fourth claim seeks injunctive relief against Defendants.
27 The fifth claim seeks punitive damages and the sixth asks for attorneys fees.  Defendants have
28 moved for summary judgment, claiming no constitutional or state law violations have occurred

and that Plaintiff is not entitled to injunctive relief. The court will discuss each claim separately.

### 1.     *Excessive Force Claim*

Plaintiff alleges four incidents of excessive force: (1) the initial push by Defendant Planeta as the group of officers passed; (2) the seizure of Plaintiff by Defendant Planeta after their initial contact; (3) the blow to Plaintiff's nose inflicted by Defendant Shields; and (4) the use of the Taser during booking. Defendants contend that the facts do not demonstrate a violation of Plaintiff's constitutional rights, but that if they did Defendants would be protected by qualified immunity.

#### a.     *Initial Contact*

Looking first at the initial contact between Plaintiff and Defendant Planeta, the court notes that no material issues of fact exist. It is undisputed that Defendant Planeta and several officers had formed a wedge and were forcing their way through a thick New Year's crowd in order to transport an arrested reveler to a temporary booking station. It is also undisputed that many individuals had to be moved by force in order for the officers to pass through the crowd safely. Further, no party contends that Defendant Planeta did not use some level of force to move Plaintiff and that this force was applied to Plaintiff's back in a manner that moved him several feet from his original position. The only area of contention is whether the contact was more of a nudge or more of a body-check. The court finds such a disagreement irrelevant.

The inquiry the court must make to determine whether excessive force was used is whether the use of force in the case is objectively reasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). In doing so, the court is to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001) (citing *Graham*, 490 U.S. at 396) (internal quotations omitted). The court must also pay careful attention to the facts and circumstances of the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002) (quoting *Graham*, 490 U.S. at 397). The

determination is not made with 20/20 hindsight, but rather by considering the perspective of a reasonable officer on the scene. *Id.* (quoting *Graham*, 490 U.S. at 396). While such determinations of reasonableness are generally left to the jury, the court may decide this issue as a matter of law when, taking all facts in the light most favorable to the plaintiffs, the use of force was objectively reasonable under the circumstances. *Id.* at 651 n.1.

Even assuming that the brief movement of Plaintiff by Defendant Planeta constituted a seizure, *see Graham*, 490 U.S. at 395 n.10 (noting a seizure only occurs when government actors have in some way restrained the liberty of a citizen through physical force or a show of authority), the facts do not demonstrate the use of excessive force. The intrusion, even if the shove was as hard as a body check, was not significant given the large crowd on hand and the government's interest in safely transporting its officers and an arrested suspect to the safety of a temporary booking station. Thus, even when all facts are taken in a light most favorable to Plaintiff, the initial contact would not rise to the level of excessive force and would not be considered objectively unreasonable under the circumstances. Summary judgment is therefore appropriate on this portion of the claim.

      b.    *Confrontation After Contact*

After being shoved, Plaintiff righted himself and immediately turned around. It is undisputed that Plaintiff placed himself face to face with Defendant Planeta. Plaintiff contends that he struck a defensive pose, bringing his hands to his face and his knee towards his chest. Plaintiff states that he did not make contact with Defendant Planeta. Plaintiff then claims that he was grabbed by Defendant Planeta.

Defendants assert a different scenario. According to them, Plaintiff turned around after the initial contact and immediately grabbed Defendant Planeta. Defendant Planeta responded by grabbing Plaintiff by the arm and telling him to calm down and back off. It was then that Defendant Planeta noticed Plaintiff's knee moving towards him. He moved slightly and was struck on the inner thigh. This caused Defendant Planeta to believe he was being attacked.

Plaintiff's claim on this point fails for the same reason as his claim arising under the initial contact. Nothing in the facts, when taken in the light most favorable to Plaintiff, would

allow a reasonable jury to conclude that Defendant Planeta's actions were objectively unreasonable. After making appropriate contact with an individual in a crowd, that individual turns around to face Defendant Planeta and raises his hands and knee. Defendant Planeta responded by grabbing the individual by the arm and told him to calm down and back off. Given the previously noted concern over officer and suspect safety, this limited intrusion upon Plaintiff's person, even if accepted as a seizure, would not warrant a finding of excessive force. Accordingly, summary judgment is appropriate on this aspect of Plaintiff's claim.

      *c.*    *Blow to the Face*

After grabbing Plaintiff by the arm, Defendant Planeta stated that he believed he had been attacked. At that time, Defendant Shields struck Plaintiff in the face with a closed fist. The blow broke Plaintiff's nose.

The facts are in dispute on certain portions of this issue. As noted previously, Plaintiff contends he never made contact with Defendant Planeta, while Defendant Planeta contends he was kneed in the area of his inner thigh. Further, Plaintiff contends he was recoiling into a defensive position while Defendant Planeta contends Plaintiff stuck a fighting pose and intentionally tried to knee Defendant Planeta in the groin. The court considers this discrepancy to be a material dispute of fact as Plaintiff's intent as well as his actual actions are relevant to the degree of force acceptably used in response.

Having found a material issue of fact, the court notes that Defendants also argue that judgment should be entered based on the doctrine of qualified immunity. State officials are provided with a qualified immunity against section 1983 claims "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity is granted broadly and "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Moran v. Washington*, 147 F.3d 839, 844 (9th Cir. 1998) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-step

1  evaluation of qualified immunity, which has also been adopted by the Ninth Circuit. *See, e.g.*,
2  *Johnson v. County of Los Angeles*, 340 F.3d 787, 791 (9th Cir. 2003); *Jackson v. City of*
3  *Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001). The first step taken by the court is to make a
4  constitutional inquiry by determining the following issue: "based upon the facts taken in the light
5  most favorable to the party asserting the inquiry, did the officer's conduct violate a constitutional
6  right?" *Johnson*, 340 F.3d at 791 (citing *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th
7  Cir. 2001)); *Saucier*, 533 U.S. at 201. If the court finds that the officer's conduct violated a
8  constitutional right, the second step of the *Saucier* analysis is that the court determine whether
9  the officer is entitled to qualified immunity. *Johnson*, 340 F.3d at 791-92. As part of its
10 qualified immunity analysis, the court should consider whether the law governing the conduct
11 was clearly established when the conduct occurred. *Robinson v. Solano County*, 278 F.3d 1007,
12 1012 (9th Cir. 2001) (en banc). If the right violated was clearly established, the court should also
13 decide "whether the officer could nevertheless have reasonably but mistakenly believed that his
14 or her conduct did not violate a clearly established constitutional right." *Id*. at 201-02; *Saucier*,
15 533 U.S. at 201-05.

16  The first step in the two-step process is intended to "set forth principles which will
17 become the basis for a holding that a right is clearly established." *Saucier*, 533 U.S. at 201. If a
18 court were to skip this initial step, "[t]he law might be deprived of this explanation," *Id*., thereby
19 inhibiting the development of Fourth Amendment law. *See Robinson*, 278 F.3d at 1012. It is
20 therefore necessary to first consider the constitutional inquiry. Only if the court determines that
21 Plaintiff's Fourth Amendment rights were violated will the court address the immunity issue.
22 *Johnson*, 340 F.3d at 794-95; *Saucier*, 533 U.S. at 201.

23  The court notes that the resolution of the disputed issues of fact may substantially affect
24 whether qualified immunity is available to Defendants. As such, the court cannot, at this time,
25 grant summary judgment in favor of Defendants on the grounds of qualified immunity. *See*
26 *Saucier*, 533 U.S. at 201-02, *Smith v. City of Hemet*, 394 F.3d 689, 704 n.7 (9th Cir. 2005) (en
27 banc) ("Whether the officers are entitled to qualified immunity may depend in large part on
28 factual determinations the jury will be required to make."); *Santos v. Gates*, 207 F.3d 846, 855

1  n.12 (9th Cir. 2002) ("Until the jury makes those decisions [regarding disputed facts], we cannot
2  know, for example, how much force was used, and, thus, whether a reasonable officer could have
3  mistakenly believed that the use of that degree of force was lawful.").

4        Defendant Planeta argues that, even if summary judgment is not appropriate in general, it
5  is appropriate as to Defendant Planeta because he was not the person who struck Plaintiff. *See*
6  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (noting that liability under section 1983 only
7  arises upon a showing of personal participation by the defendant in order to support statement
8  that section 1983 does not allow for respondeat superior liability). While the court recognizes
9  the authority cited by Defendant Planeta, his argument fails to take into account *Boyd v. Benton*
10 *County*, 374 F.3d 773, 780 (9th Cir. 2004), cited by Plaintiff.

11       In *Boyd*, the Ninth Circuit faced a situation where multiple officers had been sued for
12 their roles in the search of an apartment. A flash-bang had been used to clear the room, which
13 the plaintiff argued constituted excessive force. The defendants argued that only the individual
14 who had tossed the flash bang could be held liable. *Boyd*, 374 F.3d at 780. The Ninth Circuit
15 disagreed noting that the officers sued were all integral participants in the raid. In its analysis the
16 court noted three factors that were met by the officers actions: (1) each officer stood armed
17 behind the individual that deployed the flash-bang; (2) each officer participated in some
18 meaningful way in the search operation which used the flash-bang; and (3) each officer
19 participated in the search knowing that a flash-bang would be used but failed to object. *Id.*

20       Generalizing these factors, the court concludes that the following two requirements must
21 be demonstrated for an individual to be considered an integral participant in an excessive force
22 claim. First, the officer must be more than a mere bystander to the underlying police action.
23 Rather, the officer must be performing some function necessary to the completion of a police
24 goal. *James ex rel. James v. Sadler*, 900 F.2d 834, 837 (5th Cir. 1990) (cited with approval in
25 *Chuman v. Wright*, 76 F.3d 292 (9th Cir. 1996). Second, the officer must continue in his actions
26 despite knowing that the actions ultimately constituting excessive force will occur, regardless of
27 whether the officer knows those actions, in fact, constitute excessive force. *See, Boyd*, 374 F.3d
28 at 780 (defining third factor as failing to object despite knowledge of the offending action).

In this instance, Defendant Planeta satisfies the first factor, but not the second. Defendant Planeta was present and performing some function necessary to the completion of a police goal. Specifically, he was supervising several officers who were attempting to move an arrested suspect through a large crowd to a temporary booking station. However, the court cannot conclude that Defendant Planeta continued his actions despite knowing the action ultimately constituting excessive force would occur. Defendant Planeta was involved in moving Plaintiff out of the way of the wedge created to move the arrested suspect and Defendant Planeta may have grabbed on to Plaintiff's arm after making initial contact. However, the use of excessive force argued here is the blow to Plaintiff's face by Defendant Shields, a wholly unrelated and unexpected action taken by Defendant Shields upon his belief that Defendant Planeta was being attacked. The disconnect between Defendant Planeta's actions and the blow from Defendant Shields convinces this court that Defendant Planeta cannot be said to have acted knowing that the action ultimately constituting excessive force would occur. There is no way Defendant Planeta could have known Defendant Shields would strike Plaintiff in the face in this situation. Accordingly, Defendant Planeta, despite his role in the overarching actions of the police, cannot be said to be an integral participant to the use of excessive force in this instance.

      *d.*      *Use of Taser*

Defendants motion for summary judgment argues that the only claim which is raised by the use of a taser on Plaintiff is one concerning the customs and policies of Defendants because Defendant Planeta did not actually fire the taser gun during Plaintiff's booking.[2] The court notes that a 1983 claim will exist under a theory of excessive force when a taser is used to inflict unnecessary and wonton pain and suffering maliciously and sadistically, for the very purpose of causing harm. *Martnez v. Stanford*, 323 F.3d 1178, 1183-84 (9th Cir. 2003). Under the facts presented to the court, a material issue of fact appears to exist regarding whether Plaintiff was

---

[2] The court notes that one Deputy Storke actually fired the taser gun. Plaintiff's motion to amend to add Deputy Storke as a defendant (#23) was recently denied (#36). Further, Plaintiff's complaint only seeks recovery against Defendant Planeta for use of the taser (#2). Accordingly, the court only considers the potential liability of Defendant Planeta at this time.

subjected to the use of a taser inappropriately. Plaintiff contends he was not resisting officer commands and was not told he would be subjected to the taser when he was booked. Defendants contend that Plaintiff was highly combative during booking and was repeatedly warned he would be subjected to the taser if he failed to comply with police orders. According to Defendants, Plaintiff was only subjected to the taser to ensure compliance with orders and to terminate his resistence, was only subdued once, and complied with all further orders once the taser was used. The court notes, however, that no argument was presented contending that a claim for excessive force would fail the standards for proceeding past summary judgment. Rather, the only claim before the court is that Defendant Planeta could not be held liable for such a claim.

Whether Defendant Planeta could be subjected to liability for the use of a taser upon Plaintiff's person turns again on the factors described in *Boyd*, as discussed above. As noted by the court, those factors are (1) whether Defendant Planeta was more than a mere bystander in the underlying police action and (2) whether Defendant Planeta continued in his actions despite knowing that the actions ultimately constituting excessive force would occur. *Boyd*, 374 F.3d at 780. Considering these factors, the court cannot conclude that Defendant Planeta was not an integral participant in the excessive force claim arising out of the use of a taser on Plaintiff's person during booking.

In this instance, Defendant Planeta was more than a mere bystander in the underlying booking process. Plaintiff has pointed to multiple facts demonstrating that Defendant Planeta was present at the booking and at least partially responsible for securing Plaintiff for the purposes of a search. Thus, it appears that Defendant Planeta was involved in the booking procedure in some manner greater than as a mere bystander.

Next, taking all factual inferences in the light most favorable to Plaintiff, it appears Defendant Planeta continued participating in the booking procedure despite knowing that a taser would be used and without objecting to its use. Plaintiff has pointed to statements in the police reports that indicate Defendant Planeta was participating in the physical restraint of Plaintiff when he was tased and that there may have been multiple warnings provided to Plaintiff, without objection from Defendant Planeta, that a taser would be applied.

Given these facts, the court cannot conclude that Defendant Planeta was not an integral participant in the application of a taser to Plaintiff's person. Thus, should that act constitute excessive force, an issue which cannot be determined by the court at this time, Defendant Planeta could be held liable under *Boyd* and *Chuman*. Summary judgment must therefore be denied on this issue.

### 2. Supervisory Liability

Plaintiff's second claim, asserted against Defendant Pierini, proceeds on two theories of liability. One seeks damages for failing to properly train and supervise his subordinates. The other seeks damages for an alleged custom or policy within the Douglas County Sheriff's Department that led to Plaintiff's injuries. Both theories seek to impose liability upon Defendant Pierini.

#### a. Custom or Policy Claim

"A suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045. There are no allegations contained in the amended complaint that Defendant Pierini directed or participated in the constitutional violations alleged to have been inflicted by Defendants Planeta and Shields. Thus, Defendant Pierini can only be held liable in his official capacity if a policy or custom, or a one-time decision by a governmentally authorized decision maker caused the violation. *Larez*, 946 F.2d at 646 (quoting *McRorie v. Shimoda*, 795 F.2d 780, 783 (9th Cir. 1986); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).

Plaintiff's main argument in this regard is that Defendant Pierini only provided a one day suspension to an officer accused of choking a detainee in a past case and that Defendant Pierini failed to reprimand either Defendant Planeta or Defendant Shields in this matter. While it is possible that a single failure to reprimand suspect behavior may signify a general custom or policy, the Ninth Circuit appears to require a more substantial showing than one incident to

establish municipal liability in section 1983 cases. *See Kanae v. Hodson*, 294 F.Supp.2d 1179, 1189-90 (D. Haw. 2003) (discussing recent Ninth Circuit cases dealing with failure to reprimand allegations supporting section 1983 municipality liability under a custom and policy theory). In this matter, the court has been presented with no facts demonstrating there is anything more than a failure to reprimand. There is no suggestion of an intent to ratify the conduct of Defendants Planeta and Shields and there is only one prior incident in which Plaintiff contends the supervisor doled out an insufficient punishment for alleged similar conduct. This history does not demonstrate a custom or policy which leaves officers free to believe they are immune to discipline for constitutional violations. *See Haugen v. Brosseau*, 339 F.3d 857, 875 (9th Cir. 2003) (custom or policy can be found when decision supporting action was the product of a conscious, affirmative choice to ratify the conduct in question); *Larez*, 946 F.2d at 647 (determining that reprimand procedures of LAPD were so ineffective that it was almost impossible for a police officer to be disciplined based on a citizen's complaint). Accordingly, there is insufficient evidence upon which a reasonable jury could find for Plaintiff on this claim and summary judgment is appropriate.

      b.     *Training and Supervision*

A municipality's failure to adequately train its officers can give rise to liability under section 1983 as a policy causing constitutional harm. *Merritt v. County of Los Angeles*, 875 F.2d 765, 769 (9th Cir. 1989). However, to prevail on such a claim, a plaintiff must demonstrate: (1) an inadequate training program; (2) deliberate indifference on the part of the County in adequately training its law enforcement officers; and (3) that the lack of training actually caused a deprivation of constitutional rights. *Id.* at 770.

In reviewing the evidence presented by Plaintiff, the court notes that there is no evidence concerning the training received by officers of the Douglas County Sheriff's Department. Rather, Plaintiff relies on his allegations that his constitutional rights were violated and his evidence as to how he was treated to bootstrap his argument that the training policies were inadequate. Thus, Plaintiff has provided no evidence to demonstrate the level of training received by officers of the Douglas County Sheriff's Department and therefore cannot

1  demonstrate that training was inadequate.

2  Further, the court notes that Plaintiff has provided no evidence suggesting a deliberate
3  indifference on the part of the County in adequately training its officers or any actual causal
4  relationship between the alleged lack of training and Plaintiff's injuries. The mere fact that an
5  injury may have been suffered by Plaintiff does not work to prove that injury was caused by
6  inadequate training as opposed to the unrelated decision of one officer. Accordingly, no
7  reasonable jury could find for Plaintiff on this claim and summary judgment is appropriate.

8  *3.  Assault and Battery Claim*

9  Plaintiff has brought a claim against Defendants Planeta and Shields alleging he was
10 battered by the officers. Under Nevada law, "a police officer who uses more force than is
11 reasonably necessary to effect a lawful arrest commits a battery upon the person arrested." *Yada*
12 *v. Simpson*, 913 P.2d 1261, 1262 (Nev. 1996), *superceded by statute on other grounds as*
13 *recognized by RTTC Commc'n, LLC v. Saratoga Flier, Inc.*, 110 P.3d 24, 29 (Nev. 2005)[3].
14 Defendants seek summary judgment on this claim by arguing that Defendants Planeta and
15 Shields' actions were privileged. *See Ramirez v. City of Reno*, 925 F.Supp. 681, 691 (D. Nev.
16 1996) ("Police officers are privileged to use that amount of force which reasonably appears
17 necessary, and are liable for battery to the extent they use more force than is reasonably
18 necessary.").

19 The court notes that no constitutional violations occurred when Defendant Planeta made
20 initial contact with Plaintiff or when he grabbed Plaintiff shortly thereafter. Further, all of the
21 contact made with Plaintiff after that point was limited to Defendant Shields or Deputy Storke.
22 As the court has been presented with no case law suggesting the constitutional theory behind
23 integral participants being held liable under section 1983 applies to state law battery claims, there

---

[3] The court notes that while the Nevada Supreme Court upheld the jury verdict in *Yada* finding that an officer committed a battery upon a suspect through the use of excessive force, no discussion was had regarding discretionary immunity. Thus, while the court recognizes this case to stand for the proposition that a battery may occur when excessive force is used, the case provides no indication that such a claim is not subject to an immunity analysis.

13

is no conclusion available other than that Defendant Planeta's actions in this matter are privileged under state law. However, the court notes that an issue of fact exists concerning whether the force used by Defendant Shields, in striking Plaintiff in the face, was excessive.

Further, while Defendants argue their actions were privileged under state law, they fail to discuss the Nevada discretionary immunity statute. Section 41.032(2) of the Nevada Revised Statutes provides that "no action may be brought . . . against . . . an officer . . . of the State . . . which is: [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." The Nevada Supreme Court has specifically concluded that a police officer's decision to make a traffic stop and arrest a person for failing to sign a traffic ticket are discretionary acts because they require the officer to use his judgment. *Ortega v. Reyna*, 953 P.2d 18, 23 (Nev. 1998); *see also Maturi v. Las Vegas Metro. Police Dep't*, 871 P.2d 932, 933 (Nev. 1994) (holding officer's decision to handcuff suspect behind back instead of in front despite complaints of medical problems was discretionary); *Herrera v. Las Vegas Metro. Police Dep't*, 298 F.Supp.2d 1043, 1054 (D.Nev. 2004) (finding that the police's strategy for approaching a suspect as well as their moment by moment decisions made throughout the interaction are discretionary acts entitled to state law immunity). The court's understanding of this statute leads to concerns that immunity may be applicable herein. However, the court will not find immunity without further briefing. Accordingly, both parties are to submit further briefing concerning the applicability of discretionary immunity to a civil battery claim against a state law-enforcement officer.

    4.    *Injunctive Relief Claim*

Plaintiff's fourth claim for relief seeks an injunction requiring Defendants to enlist an outside agency to investigate the acts that occurred and to review and revise current policies and protocols concerning arrests and the amount of force officers should use. Defendants seek summary judgment on this claim by arguing that Plaintiff lacks standing to seek injunctive relief and that Plaintiff cannot demonstrate the irreparable harm that would warrant injunctive relief.

To satisfy the constitutional requirements of Article III standing when seeking an injunction, a plaintiff must demonstrate that he has sustained or is immediately in danger of

1  sustaining some direct injury and that the injury or threat of injury is both real and immediate, not
2  conjectural or hypothetical. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). Past
3  exposure to illegal conduct does not demonstrate a present case or controversy which would
4  warrant injunctive relief unless accompanied by continuing and present adverse affects. *Id.* at
5  102.

6        Plaintiff contends that he may be subject to further unconstitutional actions should he
7  return to Douglas County because Defendants do not properly supervise or reprimand officers.
8  Accordingly, Plaintiff contends that he suffers a real chance of once again being accosted
9  improperly by officers in Douglas County. The court has reviewed Plaintiff's complaint and
10 arguments and find them no different than the allegation made in *Lyons* that the plaintiff could be
11 subjected to a choke hold in the future if he was ever stopped by police. In this matter, Plaintiff
12 was injured by police during crowd control procedures on New Year's Eve. In moving a suspect
13 through a large crowd contact was made with Plaintiff, when Plaintiff turned around one officer
14 believed he was attempting to attack the passing officers. Force was used upon Plaintiff at that
15 time.

16       Nothing in the above scenario suggests that Plaintiff is likely to suffer a similar injury or
17 that present, adverse consequences follow the prior harms Plaintiff alleges he has suffered. Thus,
18 the court finds this matter indistinguishable from the long line of Supreme Court cases
19 concluding that jurisdiction is lacking to enter injunctive relief. *See Lyons*, 461 U.S. at 101-03;
20 *Ashcroft v. Mattis*, 431 U.S. 171, 172-73 (1977); *Rizzo v. Goode*, 423 U.S. 362, 372 (1976);
21 *O'Shea v. Littleton*, 414 U.S. 488, 493-96 (1974); *Golden v. Zwickler*, 394 U.S. 103, 109 (1969).
22 Further, for the same reasons that Plaintiff's claims alleging an actionable custom or policy have
23 been dismissed upon summary judgment, the court finds no basis for a conclusion that there is a
24 continuing pattern of illicit law enforcement behavior. *See Allee v. Medrano*, 416 U.S. 802, 815
25 (1974) ("Where, as here, there is a persistent pattern of police misconduct, injunctive relief is
26 appropriate."). Accordingly, the court lacks jurisdiction to enter an injunction in this matter and
27 summary judgment is appropriate on this claim.
28 ///

    5.    *Punitive Damages Request*

Plaintiff admits that punitive damages are inappropriate in this matter. Accordingly, Defendants will not be subject to a potential award of punitive damages.

### CONCLUSION

The court concludes that there are disputed issues of material fact present in this matter. These factual disputed preclude both summary judgment and the protections of qualified immunity from being appropriate at this time. However, the court notes that Plaintiff's claims have been narrowed based on the evidence presented to focus on the blow to Plaintiff's face and the use of a Taser upon Plaintiff's person. The remaining claims fail to survive summary judgment as discussed above.

It is therefore ORDERED that Defendants' Motion for Summary Judgment (#21) is GRANTED in part and DENIED in part as discussed above;

It is further ORDERED that Plaintiff's unopposed Motion to Excuse Late Filing of Exhibits Due to Electronic Filing Errors (#29) is GRANTED;

It is further ORDERED that Defendants submit additional briefing on whether Nevada's discretionary immunity statute applies to bar Plaintiff's assault and battery claim within fifteen (15) days of this order being filed. Plaintiff shall have ten (10) days to file a response and Defendants an additional ten (10) days to reply.

DATED this 17th day of January, 2007.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE