```
                    UNITED STATES DISTRICT COURT

                         DISTRICT OF NEVADA

                              * * * * *
```

CORRY CASTANEDA,

        Plaintiff,                03:05-CV-0283-LRH-RAM

v.

                                     <u>ORDER</u>

DOUGLAS COUNTY SHERIFF'S
INVESTIGATOR RORY PLANETA;
DOUGLAS COUNTY SHERIFF'S DEPUTY
SHIELDS; RON PIERINI, individually and in
his official capacity as DOUGLAS COUNTY
SHERIFF; and DOUGLAS COUNTY, a duly
constituted political subdivision of the State of
Nevada,

        Defendants.

On January 17, 2007, this court granted in part and denied in part Douglas County Sheriff's Investigator Rory Planeta, Douglas County Sheriff's Deputy Shields, Douglas County Sheriff Ron Pierini, and Douglas County's motion for summary judgment. However, this court further ordered that Defendants submit additional briefing on whether Nevada's discretionary immunity statute applies to bar Plaintiff's assault and battery claim (#39). Defendants have filed this supplemental briefing (#40). Plaintiff has, in turn, filed a response (#41) to which Defendants have filed a reply (#42).

**I. Facts and Procedural History**

Taking the facts in the light most favorable to Plaintiff, the following describes the events at issue in Defendants' motion for summary judgment: During the early morning hours of New Year's Day, 2004, Plaintiff was body-checked by officers as they pushed through a crowd at

1  Stateline, Nevada.  Plaintiff turned around, becoming face-to-face with Defendant Rory Planeta,
2  an investigator with the Douglas County Sheriff's Department.  Plaintiff raised his hands to his
3  face and his knee towards his chest to protect himself from further contact.  As a result,
4  Plaintiff's knee struck Defendant Planeta's inner thigh.

5  Defendant Planeta then alerted Defendant Shields, a Douglas County Sheriff's
6  Department Deputy, that he believed Plaintiff tried to "knee" him.  The two officers grabbed
7  Plaintiff's arms and took him several feet behind a group of officers who were maintaining a
8  perimeter.  In response, Plaintiff told the officers that "this is a huge mistake."  Quite a few
9  seconds after Plaintiff was body-checked and when Plaintiff was behind the police perimeter,
10 Defendant Shields struck Plaintiff in the face, breaking his nose.  Defendants Planeta and Shields
11 then placed Plaintiff under arrest for battery on an officer.

12 Plaintiff has sued Defendants Shields and Planeta for assault and battery under Nevada
13 law.  This court's January 17, 2007, order granted summary judgment against Plaintiff on his
14 assault and battery claim against Defendant Planeta.  However, the court found that an issue of
15 fact still exists concerning whether Defendant Shields used excessive force against Plaintiff and
16 thereby inflicted a battery on him under *Yada v. Simpson*, 913 P.2d 1261 (Nev. 1996) (affirming
17 a battery claim against a police officer when the jury was instructed that "a police officer who
18 uses more force than is reasonably necessary to effect a lawful arrest commits a battery upon the
19 person arrested").  However, this court reserved decision on Defendant Planeta's motion for
20 summary judgment on Plaintiff's assault and battery claim because Defendants' brief did not
21 discuss Nevada's discretionary immunity statute.

22 **II. Standard of Review**

23 A court must grant summary judgment if the pleadings and supporting documents, when
24 viewed in the light most favorable to the non-moving party, "show that there is no genuine issue
25 as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.
26 R. Civ. P. 56(c).  An issue as to any material fact is only genuine if the evidence regarding the
27 disputed fact is "such that a reasonable jury could return a verdict for the nonmoving party."
28 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient [to preclude summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

### III. Discussion

Section 41.032(2) of Nevada Revised Statues provides that "no action may be brought . . . against . . . an officer . . . of the state . . . which is: [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of . . . any officer . . . whether or not the discretion involved is abused." Recently, the Nevada Supreme Court adopted the United States Supreme Court's test in *United States v. Gaubert*, 499 U.S. 315 (1991) for determining the scope of discretionary immunity. *Martinez v. Maruszczak*, No. 44347, 2007 WL 2948789, at *8 (Nev. Oct. 11, 2007). The court stated that "to fall within the scope of discretionary-act immunity, a decision must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *Id.* The court clarified, however, "that decisions at all levels of government, including frequent or routine decisions, may be protected by discretionary-act immunity, if the decisions require analysis of government policy concerns." *Id.*

*Martinez* involved a tort claim against a doctor employed by the University of Nevada, School of Medicine. *Id.* at *1. The plaintiffs brought a wrongful death action against the doctor for his alleged negligence in treating the deceased at the University Medical Center in Las Vegas. *Id.* The district court dismissed the plaintiffs' claim, but the Nevada Supreme Court reversed, holding that the doctor was a state employee who was not protected by Nevada's discretionary immunity statute. *Id.* at *2, 5-8. The court reasoned that discretionary immunity did not apply because the doctor's treatment decisions did not involve public policy considerations. *Id.* at *8.[1]

As a threshold matter, the *Martinez* court stated that limitations on Nevada's waiver of

---

[1] The court's decision in *Martinez* was a significant departure from its prior case law regarding discretionary immunity, which inquired whether a government official's decision was a discretionary act that required "the exercise of personal deliberation, decision and judgement" or was "[a] ministerial act performed by an individual in a prescribed legal manner in accordance with law, without regard to, or the exercise of, the judgment of the individual." *Foster v. Washoe County*, 964 P.2d 788, 792 (Nev. 1998).

sovereign immunity should be strictly construed. *Martinez*, 2007 WL 2948789 at *3. It also declared that the purpose of Nevada's waiver of sovereign immunity is to "compensate victims of government negligence in circumstances like those in which victims of private negligence would be compensated. *Id.* at *7.

The court then described a two-part test, which it referred to as the *Berkovitz-Gaubert* test because it was taken from two United States Supreme Court decisions–*United States v. Gaubert*, 499 U.S. 315 (1991) and *Berkovitz v. United States*, 486 U.S. 531 (1988)–which delineate the scope of discretionary immunity under the Federal Torts Claims Act. The first prong requires a court to decide whether "the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice.'" *Id.* at *7. Second, if the first prong is met, the court must consider "whether [the] judgment is of the kind that the discretionary-function exception was designed to shield." *Id.*

The court elaborated that "[t]he focus of the second criterion's inquiry is not on the employee's 'subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis. Thus, the court need not determine that a government employee made a conscious decision regarding policy considerations in order to satisfy the test's second criterion." *Id.* The court also recognized that under the Federal Tort Claims Act, courts "applying the *Berkovitz-Gaubert* test must assess cases on their facts, keeping in mind Congress' purpose in enacting the exception: 'to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.' Thus, if the injury-producing conduct is an integral part of governmental policy-making or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if the legislative or executive branch's power or responsibility would be usurped, immunity will likely attach under the second criterion." *Id.*

Applying the *Berkovitz-Gaubert* test, the *Martinez* court found that first prong of the *Berkovitz-Gaubert* test was satisfied because the doctor's diagnostic and treatment decisions involved judgment and choice. *Id* at *8. However, the court ultimately concluded the doctor was

not entitled to discretionary immunity because his diagnostic and treatment decisions did not include policy considerations. *Id.*

In the present case, the court finds that granting discretionary immunity to Defendant Shields is not warranted because he fails the second prong of the *Berkovitz-Gaubert* test. Nevada Revised Statues section 171.122(1) states the amount of nondeadly force officers may use in effecting an arrest: "The defendant must not be subjected to any more restraint than is necessary for his arrest and detention. If the defendant either flees or forcibly resists, the officer may . . . use all necessary means to effect the arrest." Viewing the facts in the light most favorable to Plaintiff, his contact with Defendant Planeta's thigh was an unintended result of Plaintiff assuming a defensive posture. ((#39), Ex. A, Deposition of Corry Castaneda at 40:14-22). Thus, section 171.122(1) of the Nevada Revised Statutes authorized Defendant Shields to use no more restraint than necessary to arrest Plaintiff because we must assume that Plaintiff was not fleeing or resisting arrest. While Defendant Shields' authority would be circumscribed under this scenario, a determination of what constituted the least amount of restraint to arrest Plaintiff still involves an element of individual judgment or choice. Thus, Defendant Shields' decision to strike Plaintiff's face fulfills the first prong of the *Berkovitz-Gaubert* test.

However, Defendant Shields' decision to strike Plaintiff's face fails the second prong of the *Berkovitz-Gaubert* test. The *Martinez* court cited a decision to create and operate a public hospital and college of medicine as the type of decision that satisfies the second prong of the *Berkovitz-Gaubert* test. *Martinez,* 2007 WL 2948789 at *8. However, it contrasted this type of decision with the diagnostic and treatment decisions of the defendant. *Id.*

The court finds that Defendant Shields' decision to strike Plaintiff's face is akin to a doctor's treatment decisions and distinguishable from a decision to create and operate a hospital. For instance, a sheriff's decision to assign a certain number of deputies to a location would implicate a policy decision because it involves how to best allocate a county's resources–just as a policymaker's decision to create a hospital would depend on his or her social and economic goals. However, once Defendant Shields began fulfilling his law enforcement duties on New Year's Day, he was executing preexisting goals formulated by the county's policymakers who

decided to create his job, train him, and place him at Stateline–just as the doctor in *Martinez* was carrying out the goals of policymakers who decided to create and staff the University Medical Center in Las Vegas. Therefore, Defendant Shields' decision to strike Plaintiff's face was not based on considerations of social, economic, or political policy. *See also Garcia v. United States*, 826 F.2d 806, 809 (9th Cir. 1987) ("While law enforcement involves exercise of a certain amount of discretion on the part of individual officers, such decisions do not involve the sort of generalized social, economic and political policy choices that Congress intended to exempt from tort liability.") (citing *Caban v. United States*, 671 F.2d 1230 (2d Cir. 1982)).[2]

**IV. Conclusion**

Defendant Shields was not making a decision based on considerations of social, economic, or political policy when he struck Plaintiff's face. Thus, under *Martinez v. Marusczczak*, he is not entitled to discretionary immunity under Nevada Revised Statutes section 41.032(2).

IT IS THEREFORE ORDERED that Defendant Shields' motion for summary judgment (#21) is DENIED as to Plaintiff's assault and battery claim.

IT IS SO ORDERED.

DATED this 30th day of October, 2007.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[2] In *Martinez*, the Nevada Supreme Court turned to federal decisions "to aid in formulating a workable test for analyzing claims of immunity" under Nevada's discretionary immunity statute. *Martinez*, 2007 WL 2948789 at *6. As such, the court finds that federal precedent is also relevant in interpreting the scope of Nevada's discretionary immunity standard. *See also id.* at *6 n. 29 (collecting Nevada cases where federal decisions interpreting discretionary immunity under the Federal Torts Claims Act were used to interpret Nevada's discretionary immunity statute).